236 So.2d 542 (1970)
Mrs. Claudia Louise GUY
v.
Laurence L. EGANO, Taxicab Bonding Association, Inc., and St. Louis Fire and Marine Insurance Company, Inc.
James L. GUY
v.
Laurence L. EGANO, Taxicab Bonding Association, Inc. and St. Louis Fire and Marine Insurance Company, Inc.
Laurence L. EGANO
v.
James L. GUY.
Nos. 3826-3828.
Court of Appeal of Louisiana, Fourth Circuit.
June 1, 1970.
Rehearing Denied July 6, 1970.
*544 Wicker, Wiedemann & Fransen, A. Remy Fransen, Jr., New Orleans, for Mrs. Claudia Louise Guy.
Porteous, Toledano, Hainkel & Johnson, C. Gordon Johnson, Jr., New Orleans, for State Farm Mut. Auto. Ins. Co. and James L. Guy.
George J. Kambur and Clark A. Richard, New Orleans, for Laurence L. Egano.
A. J. Marciante, New Orleans, for Laurence Egano, Taxicab Bonding Ass'n, Inc. and St. Louis Fire and Marine Ins. Co., Inc.
Before SAMUEL, DOMENGEAUX and SWIFT, JJ.
SAMUEL, Judge.
These appeals and answers thereto involve multiple claims and cross claims arising from a two-car collision at the intersection of Jefferson Highway and an Ochsner Foundation Hospital private service road in the Parish of Jefferson. In the three separate suits, consolidated for trial in the district court and for argument here, the following demands were made:
(1) Mrs. Claudia L. Guy, a guest passenger in one of the cars owned and driven by her husband, James L. Guy, sought recovery, for personal injuries sustained by her in the collision, from Laurence L. Egano, the driver of the other car (a taxicab) involved in the accident and from the insurers of that car, Taxicab Bonding Association, Inc. and St. Louis Fire and Marine Insurance Company, Inc., or from State Farm Mutual Automobile Insurance Company, her husband's insurer, or from all those defendants in the event concurrent negligence was determined;
(2) James L. Guy sued Egano, the taxicab driver, and his two insurers, Taxicab Bonding and St. Louis Fire and Marine, for damages to his car and medical expenses incurred by him as a result of his wife's injury;
(3) Egano sued James L. Guy for personal injuries and special damages incurred by Egano in the collision.
All defendants denied negligence on the part of the driver for whom each would be liable and alternatively pleaded contributory negligence. Each prayed for contribution in the event Mrs. Guy recovered on a finding of concurrent negligence. Based on a policy provision excluding coverage for bodily injury to any member of the insured's household, State Farm, insurer of the Guy vehicle, also urged a policy defense against her claim.
The trial court rendered one judgment in the three cases: (1) in favor of Mrs. Guy, the guest passenger, for $4,400 and against Egano, Taxicab Bonding Association, Inc. and St. Louis Fire and Marine Insurance Company, Inc.; (2) on the third-party demand of the defendants cast, holding James Guy liable for contribution of one-half the amount of the judgment in his wife's favor on a finding he was concurrently negligent; (3) dismissing State Farm on its policy defense; and (4) dismissing all others claims. Through appeals or answers to appeals all issues raised in the trial court are now before us. In addition Claudia Guy seeks an increase in quantum.
In reviewing liability we could not reconstruct a factual account of the accident from the testimony of either driver. We agree with the trial court's observation that Egano's testimony is unimpressive. Likewise, Guy's credibility is suspect in view of numerous statements made by him during the trial which were impeached by testimony he had previously given in a deposition. Egano appears to have been *545 too intoxicated at the time of the accident to give a correct factual account even assuming he was inclined to do so. Our findings of fact rest principally on James Guy's admissions against interest and physical evidence observed by the police officer who conducted the accident investigation. We conclude the accident happened this way:
On September 17, 1965 at 3:15 p. m., James Guy, with his wife as a guest passenger, drove from Ochsner Hospital intending to return to his home in Meridian, Mississippi. He traveled along a private service road connecting the hospital parking area and Jefferson Highway and stopped at the edge of the highway's eastbound lanes. At this point, Jefferson Highway has four traffic lanes separated by a neutral ground. Two are for eastbound and two are for westbound traffic. Guy intended to cross the eastbound lanes and then execute a left turn into the westbound roadway after passing through the neutral ground break.
While he was stopped at the highway entrance a car came to a stop in its right eastbound lane and waited, apparently intending to turn into the service road from which Guy would emerge. Guy then moved his car forward near to the center line of the eastbound lanes, blocking traffic in the right lane as he awaited an opportunity to cross the left lane into the neutral ground break. At that time an automobile moving eastward in the left lane turned left into the same neutral ground break for which Guy was headed. The following car in the left eastbound lane also signaled a left turn but did not move into the neutral ground break because the preceding automobile blocked its entrance. Thus the highway eastbound lanes were blocked, the right lane by the motorist waiting to turn into the hospital service road and the left lane by the second vehicle intending a left turn from the left eastbound lane. The Guy automobile was straddling the highway with its front near the center line. Between the front of the two stopped vehicles headed eastward and the side of the Guy vehicle was a space wide enough to permit passage of a car.
Egano, who was driving a taxicab in the eastbound highway lanes, arrived on the scene when the cars were positioned as described above. He attempted to circumvent the traffic blockage by driving onto the shell shoulder to the right of the eastbound lanes, turn left and go through the opening between the front of the stopped vehicles in the outside (right) eastbound land and the left side of Guy's car, cut right in front of the Guy car and then continue in an easterly direction down Jefferson Highway. Egano was attempting this maneuver when Guy, after looking to his right at traffic conditions in the westbound lanes, started forward without looking to his left. He did not see the taxicab until he was hit. The right front fender of the cab hit the left front fender of the Guy car.
After hitting Guy, the taxicab continued moving, its left wheels jumping the neutral ground while the right wheels remained in the left eastbound lane. Egano brought his cab to a stop within the same block. After speaking briefly with the Guys, he left the scene. He was found within the next half hour by a state police officer about a mile away. He had parked his car in the right eastbound traffic lane and was attempting to pull the smashed fender away from the tire. The officer testified Egano's breath had the odor of alcohol, his speech was incoherent and he could not stand without support after he was returned to the accident scene in a police car. In short, he was drunk.
At the scene the officer found tire tracks in the shell shoulder of the eastbound lanes. The tracks continued to the highway at the point where there had been a gap in the stopped traffic. White tire marks were laid down on the black asphalt roadway from the shells to the point of impact and then to and on the neutral ground.
*546 We conclude the Egano vehicle laid down the tire tracks in the shells and left the white marks across the highway when its driver attempted to maneuver through the blocked eastbound traffic.
Based on this factual finding, we agree with the trial court's conclusion that the accident was caused by the concurrent negligence of both drivers. Egano's negligence consisted of attempting a dangerous and unlawful maneuver to get through a traffic jam; Guy's negligence lies in his failing to observe what he should and would have seen had he looked to his left before moving his automobile. Thus, the negligence of both drivers bars their respective claims.
We now turn to the award for pain and suffering to Mrs. Guy, which award she claims is inadequate. She and her husband returned home to Meridian after the accident. The next day she was hospitalized by her family doctor when she consulted him with complaints of headache and severe neck pain. She was treated with muscle relaxants and physiotherapy during a week-long stay in the hospital.
After her discharge she continued frequent visits to her doctor and received physiotherapy until January, 1966. During 1966 she consulted several doctors with complaints of neck pain and headaches and was treated for them. She also had physiotherapy intermittently. In November, 1966 she consulted Dr. Gordon McFarland, an orthopedic surgeon with Ochsner. He hospitalized her for five days, placing her in cervical traction. As this treatment was unsuccessful, Dr. McFarland prescribed muscle relaxants which after two weeks somewhat alleviated the pain. During the next eighteen months, she obtained treatment and physiotherapy. In July, 1968 she was hospitalized again for treatment of the neck.
The consensus of opinion among the various treating physicians was that Mrs. Guy's cervical spine was severely injured as a result of the accident. Mrs. Guy testified she had no neck and head complaints prior to the accident. Her statement is substantiated by medical records of Ochsner Clinic which show she registered no complaints of headache or neck pain when she underwent a routine examination in May, 1965, some four months before the accident. Intermittently for three years after the accident she experienced considerable pain from this neck injury and during that time was hospitalized three times for treatment.
In awarding plaintiff $4,400 for pain and suffering, the trial court relied on Palmisano v. United Services Automobile Ass'n, La.App., 217 So.2d 774. That case involved a whiplash injury to a woman who was required to wear a Thomas collar for three months after the accident and who suffered flare-ups to the date of trial some twenty-seven months after she was injured. A jury returned a verdict of $5,000, of which $4,400 was an award for pain and suffering. She was never hospitalized. However, in the palmisano case it must be noted we were not required to determine whether quantum was inadequate. The plaintiff did not appeal or answer the defendant's appeal seeking an increase. Only the defendant questioned the award, therefore our review was limited to a consideration of whether or not the award was excessive.
In the instant case the plaintiff's injury required three separate hospitalizations, one immediately after the accident, the second eighteen months later and the third almost three years after the injury. All treating physicians were of the opinion the neck injury resulted from the accident. It is our impression that Mrs. Guy exaggerated the extent of her pain and suffering, but in view of the medical evidence and the extensive treatment required, extending over a three year period, we conclude an award of $4,400 is inadequate and the amount should be increased to the sum of $7,500. Ardoin v. Travelers Insurance Co., La.App., 229 So.2d 426; Collier v. Fireman's Fund Ins. Co., La.App., 225 So. *547 2d 9; Haik v. New Orleans Public Service, Inc., La.App., 219 So.2d 591; Harney v. Kountz, La.App., 218 So.2d 913; Desroche v. Seybold, La.App., 209 So.2d 288; Manning v. Herrin Transportation Company, La.App., 201 So.2d 314.
Finally, we must determine whether State Farm was properly dismissed from this suit on its policy defense. The contract of insurance was entered into in Meridian, Mississippi and contained the following exclusionary clause:
"EXCLUSIONS * * * INSURING AGREEMENTS I and II THIS INSURANCE DOES NOT APPLY UNDER:
(i) Coverage A to bodily injury to the insured or any member of the family of the insured residing in the same household as the insured. * * *"
Counsel for Egano and his insurers first question whether the exclusionary clause was in effect when the accident occurred. The policy filed in evidence is for the period from December 14, 1963 through June 14, 1964. Although the accident happened more than a year after the expiration date, the record reflects State Farm renewed by issuing renewal slips extending the same coverage for the period shown on the renewal slip. This was done in lieu of issuing a new policy at each renewal. Thus, the exclusionary provision was in full force and effect at the time of the accident.
Defendants further contend the exclusionary clause contravenes public policy of the State of Louisiana and therefore can have no application to an accident occurring in this state. They point to the fact that, insofar as policies issued in Louisiana are concerned, the Commissioner of Insurance of this state will not permit a foreign insurance company to exclude members of the insured's household from coverage. Relying on that fact and on Louisiana decisions upholding the right of an injured party to bring a direct action against an insurer even on a policy which, issued in another jurisdiction, expressly contracts against the right to bring a direct action, they urge us to hold this clause ineffective in the instant case. See Churchman v. Ingram, La.App., 56 So.2d 297.
The right to bring a direct action is one conferred by Louisiana statutory law. Insurance contracts prohibiting the direct action contravene our statute and for that reason the policy provision prohibiting a direct action will not be recognized in our courts. But in the instant case the Insurance Commissioner's regulation as to how foreign insurers write business in this state is not tantamount to a statutory prohibition against including such an exclusionary provision in a policy. It is an established principle of our jurisprudence that the insurer and the insured may agree to limit liability in any manner, in the absence of a statutory provision to the contrary. See Johnson v. Universal Automobile Insurance Association, La.App., 124 So.2d 580; Weems v. International Automobile Insurance Exchange, La.App., 159 So.2d 321; and McCoy v. Royal Indemnity Company, La.App., 174 So.2d 260.
Counsel for Egano and his insurers finally argue that even if State Farm's exclusionary clause is a valid defense to Mrs. Guy's claim, this insurer is still liable to them for contribution.
We find no merit in this contention. Contribution is based on the theory that one who seeks it is solidarily liable for a debt with the one from whom he is entitled to recover. Here, a solidary obligation due by the defendants cast and State Farm to Mrs. Guy could arise only if those defendants and State Farm were either joint tort feasors or insurers of joint tort feasors. LSA-C.C. Art. 2103. As we have already concluded State Farm has no obligation at all to Mrs. Guy, there is no basis upon which Egano and his insurers can obtain contribution from State Farm.
*548 For the reasons assigned, the judgment appealed from is amended so as to increase the amount awarded to Mrs. Claudia Louise Guy from $4,400 to $7,500. As thus amended, and in all other respects, the judgment appealed from is affirmed; costs of this appeal to be paid by Laurence L. Egano, Taxicab Bonding Association, Inc. and St. Louis Fire and Marine Company, Inc.
Amended and affirmed.