469 So.2d 319 (1985)
Julie CLARKE, et al., Plaintiffs-Appellants,
v.
PROGRESSIVE AMERICAN INSURANCE COMPANY, Defendant-Appellee.
No. 16908-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1985.
Rehearing Denied June 7, 1985.
*320 Neblett, Beard & Arsenault by Stacy De-Martini Bruton, Alexandria, for plaintiffs-appellants.
Gist, Methvin, Hughes & Munsterman by DeWitt T. Methvin, Jr., Alexandria, for defendant-appellee.
Before HALL, MARVIN and JASPER E. JONES, JJ.
MARVIN, Judge.
In this appeal and among other issues, we determine that a surplus line automobile liability insurer under LRS 22:1257 may not exclude the wife of its named insured from coverage afforded other guest passengers under LRS 22:655 and 32:861 when she is a guest passenger in her husband's vehicle and is injured because of his fault.
Mrs. Clarke and Mr. and Mrs. Kendrick, also guest passengers, were injured when Mrs. Clarke's husband lost control of his pickup truck which then ran off the highway and collided with a tree. Each of the guest passengers sued Mr. Clarke's liability insurer, the defendant-appellee.
*321 The insurer's policy declares that it is delivered as surplus line coverage under the Insurance Code of Louisiana and that the insurer is not authorized to do business in Louisiana. The named insured is Mr. Clarke. By policy definition, Mrs. Clarke is also a named insured because she is a resident of Mr. Clarke's household. Exclusion (k) of the policy, on a form not submitted for approval by the offices of the Louisiana Insurance Commissioner, effectively states that the insurer is not liable for personal injury to any person who is defined as an insured.
A surplus line insurer is not authorized itself to do business in Louisiana, but is allowed to write liability insurance here when "certain insurance coverages cannot be procured from authorized insurers." LRS 22:1257. Section 1259 of the Insurance Code states:
Insurance contracts procured as surplus line coverage from unauthorized insurers in accordance with this part shall be fully valid and enforceable as to all parties, shall be given recognition in all manners and respects to the same effect as like contracts issued by authorized insurers. Emphasis supplied.
LRS 22:655 in part declares the policy underlying the creation of the direct cause of action against a liability insurer.
It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons, his or her survivors or heirs, to whom the insured is liable; and that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor within the terms and limits of said policy. Emphasis supplied.
LRS 32:861, of more recent origin, has been construed to reinforce the policy of LRS 22:655. That statute, the Compulsory Insurance Law, reads as follows:
A. Every self-propelled motor vehicle registered in this state ... shall be covered by a motor vehicle liability policy as defined by R.S. 32:900 ...
We noted the policy in Fields v. Western Preferred Cas. Co., 437 So.2d 344 (La.App. 2d Cir.1983), writ denied, where we construed LRS 32:861 and 900 and stated "the purpose of the compulsory liability security law is not to protect the owner or operator against liability, but to provide compensation for persons injured by the operation of insured vehicles." 437 So.2d at 346.
The legislature additionally has sought to provide the faultless victim of a motor vehicle accident additional protection by requiring UM coverage in every liability policy unless that coverage is expressly rejected in writing by the insured-applicant. LRS 22:1406 D(1).
As one treatise notes:
A difficult question of construction arises where the policy exclusion of the named insured is invoked to deny coverage with respect to a person who in fact is a named insured but had been made such without his or her knowledge.... [S]ince a named insured is "party" to the contract, a person cannot "unknowingly" enter into a contract and become a named insured. Consequently, the solution to the problem is to reform the policy to exclude the unknowing person as a named insured. To illustrate the foregoing, it has been held that where a husband and wife are both listed as "named insureds" and recovery by a named insured is excluded, but the wife was so named without her knowledge or consent, the policy may be reformed to strike out the name of the wife and thus permit her to recover where she was injured when riding in the husband's automobile.... Couch on Insurance 2d, § 45:488, footnotes and citations omitted.
Other states with compulsory insurance laws, which have considered similar exclusions have likewise held such exclusions unenforceable. See State Farm Mut. Auto. Ins. Co. v. Sivey, 404 Mich. 51, 272 N.W.2d 555 (1978); Bishop v. Allstate Ins. Co., 623 S.W.2d 865 (Ky.1981); Allstate *322 Ins. Co. v. Wyoming Ins. Dept., 672 P.2d 810 (Wyo.1983); Meyer v. State Farm Mut. Auto Ins. Co., 689 P.2d 585 (Colo.1984)[1]. Contra Farmers Ins. Exch. v. Cocking, 29 Cal.3d 383, 173 Cal.Rptr. 846, 628 P.2d 1 (1981).
LRS 32:900, defining the compulsory "motor vehicle liability policy," allows only one exclusion, i.e., for worker's compensation liability, an indication that the Legislature intended to allow no other exclusion.
At trial, Mrs. Clarke called the section chief of the property and casualty section of the office of the Louisiana Commissioner of Insurance to support her contention that the policy exclusion should be construed as against public policy. The Section Chief testified to the effect that had this policy form been submitted for approval by an insurer authorized to do business in Louisiana, the exclusion here in question would not have been allowed. While we recognize that the Commissioner of Insurance's office does not pronounce the public policy of this state, we believe that the Commissioner's interpretative practices for more than a dozen years are entitled to consideration and some weight by a court which is determining public policy. The Section Chief emphasized that the casualty section had not allowed insurers authorized to do business in Louisiana to include this exclusion in auto liability policies since 1964.
We are not unaware of such cases as Whitaker v. State Farm Mut. Auto Ins. Co., 454 So.2d 1251 (La.App. 2d Cir.1984). There the exclusion, identical in effect with the exclusion here, was upheld to bar a father's claim for his mental anguish and distress allegedly arising out of the wrongful death of his daughter who was in the legal custody of his wife, the mother of the child. The child drowned in the bathtub of the mobile home in which the father and the family resided before he was legally separated and moved elsewhere. He was the named insured. That policy was not a compulsory automobile liability policy but a homeowner's insurance policy. Marchese v. State Farm Fire & Cas. Co., 396 So.2d 490 (La.App. 4th Cir.1981) pronounced the same result, construing a similar policy.
We consider Guy v. Egano, 236 So.2d 542 (La.App. 4th Cir.1970), writ refused, upholding the exclusion, not controlling because the automobile liability policy there was a Mississippi policy. Guy noted
... that, insofar as policies issued in Louisiana are concerned, the Commissioner of Insurance of this state will not permit a foreign insurance company to exclude members of the insured's household from coverage. 236 So.2d at 547.
We also choose not to follow Hebert v. North British and Mercantile Insurance Co., 204 So.2d 655 (La.App. 3d Cir.1967), writ denied; and Maire v. State Farm Mutual Automobile Ins. Co., 228 So.2d 506 (La.App. 3d Cir.1969). These cases were decided before adoption of the compulsory insurance law in 1977. LRS 32:861, et seq. In Fields, supra, writ denied, we declined to give effect to the exclusion of a particular named employee who was driving a vehicle of the insured employer, choosing not to follow Hudson v. Thompson, 422 So.2d 640 (La.App. 3d Cir.1982). In Fields we stated
A compulsory liability policy is to be construed against the insurer ... in order to accomplish its purpose. 437 So.2d at 347.
We conclude that if the policy in question had been proposed to have been written, not by a surplus line insurer, but by an insurer authorized to do business in Louisiana, the exclusion at issue would not have been approved as a part of the contract of insurance. See Guy, supra, and testimony of the Section Chief summarized above. We accomplish here what the Commissioner of Insurance of the State of Louisiana would have accomplished had the contract *323 been submitted for approval before issuance. LRS 22:1259. We hold the exclusion surplusage, contrary to express and implied statutory policy, and of no effect. We shall allow Mrs. Clarke damages for her personal injuries.

MEDICAL COVERAGE
Medical pay coverage under the policy is "$5,000 EACH ACCIDENT." The litigants stipulated that this amount was expended to cover medical expenses incurred because of the accident. Mrs. Clarke's medical expenses were more than $3,800.
On appeal, Mrs. Clarke contends that the trial court should have accepted the testimony of her husband and found that the agent, who sold the policy, and her husband changed or amended this coverage to $5,000 per person.
Cary Wallace, the insurance agent, admitted that Mr. Clarke came back to his office after contracting for the policy, or after the policy was received by Clarke, and specifically requested $5,000 per person medical coverage instead of the $5,000 per accident coverage. Wallace said that he told Clarke that he would send Clarke's application for the $5,000 per person coverage to the insurer. The agent also testified that he completed and sent a memo to the insurer requesting the coverage. The agent denied that Clarke paid any additional premium, and denied he made a notation on Clarke's declaration sheet "see correction." Wallace said he did not receive a reply from the insurer to his correction memo.
Clarke said the agent immediately sold him the per person coverage for an increase in the premium which Clarke paid contemporaneously with a check. Clarke had written one check apparently when he contracted for the original policy. Copies of two cancelled checks, both dated April 28, 1982, endorsed by Wallace's agency, are in evidence. Clarke claims Wallace filled out the correction memo and made the notation on the policy's declaration sheet in his presence when he paid the "extra" premium.
The trial court admitted the insurance agent's testimony at trial but subject to defendant's objection that it violated the parol evidence rule and was an attempt to prove estoppel without previously pleading it. In its written reasons for judgment the court sustained defendant's objection, and ruled the testimony inadmissible.
The trial court stated that the policy [its declaration page specifying the coverages] clearly limited the medical payments coverage to $5,000 per accident or occurrence. The evidence ruled inadmissible was (1) a photocopy of the declarations page containing the handwritten note, (2) a memo written to the insurer by Wallace, and (3) the testimony of Clarke and of Wallace.
CC Art. 1848 reads in part that parol evidence
... in the interest of justice, ... may be admitted ... to prove that the written act was modified by a subsequent and valid oral agreement. Emphasis supplied.
The comments to Art. 1848 indicate that the amended article does not change the law of former CC Art. 2276, but "incorporates exceptions recognized by the Louisiana jurisprudence."
The trial court erred in excluding the recited evidence. This evidence was offered for the purpose of showing what occurred after the original contract was perfected. This evidence was admissible under the above emphasized language of Art. 1848 but it does not avail Mrs. Clarke.
The premium and tax charged by Wallace for the policy was $441.76. The two checks, dated April 28, 1982, totaled $490 ($298 and $192). We cannot draw conclusions about these amounts that were unexplained by either Mr. Clarke or by Wallace.
We also note that policy covers the period May 3 to November 3, 1982, and that it is stamped as having been "reviewed" apparently at the insurer's home office on May 15, 1982. Wallace's memo to the insurer requesting medical coverage of $5,000 per person is dated 6/12/82.
*324 Wallace denied telling Clarke that the policy was changed to provide the $5,000 per person coverage and that he collected from Clarke an additional premium for such coverage.
After hearing the questioned evidence and ruling it inadmissible, the trial court concluded that
the only medical payments coverage under the policy is the sum of $5,000 per [accident] ...
Under these circumstances and viewing the contradicted testimony most favorably toward supporting the trial court's pronouncement, we conclude the trial court was not clearly wrong in its conclusion. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
She who contends that coverage is over and above what is provided in the policy had the burden of proving facts that legally uphold the greater coverage. Staten v. Security Indus. Ins. Co., 414 So.2d 1328 (La.App. 2d Cir.1982). Under the circumstances of this record, we must find that Mrs. Clarke has not met her burden of proof.

MRS. CLARKE'S DAMAGES
Mrs. Clarke sustained a lumbar sprain and was initially seen by her family doctor in Jena who treated her conservatively. She was hospitalized for 17 days (September 3-20, 1982) for her pain and underwent physical therapy. Her family doctor referred her to an Alexandria orthopedist who saw her nine times between October 26, 1982, and June 30, 1983.
The 28-year-old Mrs. Clarke complained at the trial on September 15, 1983, that she could not do housework, could not ride for extended periods of time in an auto or engage in activities she had previously enjoyed, such as fishing. She has continued to take pain medication since the accident. Mrs. Clarke wore a brace or corset for several months after the accident. The medical testimony supports her complaints of pain and disability which the doctors thought would eventually abate. Mrs. Clarke's medical expenses exceeded $3,800.

QUANTUM
As we noted in Fields, when reforming a liability policy not in compliance with the compulsory law the policy should be adjusted "only to the extent to make the policy comply with the law." Accordingly, we reform the policy to provide Mr. Clarke with $5,000 in liability coverage in regard to Mrs. Clarke's claim.[2]
The damages Mrs. Clarke sustained are at least equal to if not greater than $5,000. We reverse and render judgment in favor of Mrs. Clarke for this amount against the defendant insurer.

CO-PLAINTIFF MR. KENDRICK
David Kendrick, also an injured guest passenger who appealed, complains that the court's award to him of $1,500 in damages is inadequate and should be increased to over $100,000.
The trial court declined to award any damages for past wages, relying on documents that showed Kendrick had been disabled by a previous accident. Specifically, the documents were a petition and answers to interrogatories in another action in which Kendrick claimed he was disabled. At a deposition in the instant action Kendrick failed to mention his previous claims and injuries.
At trial, Kendrick attempted to explain his failure to mention his previous injuries at the deposition by stating that he understood the deposition questions only pertained to injuries that "amount[ed] to anything." Kendrick apparently reasoned that his previous injuries (which he claimed disabled him for over a year and for which he settled for $25,000) did not "amount to anything.' Under these circumstances we *325 find no abuse of the trial court's discretion in awarding damages.
The medical testimony indicates that Kendrick sustained only minimal injury to his knee. Kendrick was treated by Dr. Reynolds, a family practitioner, and also by Dr. Perdue, an orthopedist, to whom Dr. Reynolds had referred Kendrick. The trial court noted that the doctors' diagnoses and prognoses of Kendrick were "greatly different," and accepted the testimony of the orthopedist.
Dr. Perdue testified that Kendrick did not exhibit swelling in the knees or a limp on the two occasions he examined him on January 19 and July 20, 1983. On January 19 the doctor prescribed exercise. Dr. Perdue testified that on July 20, 1983, Kendrick related that he had not performed the prescribed exercises. Dr. Perdue diagnosed Kendrick as having chondromalachia, or an arthritic condition of the knee, caused by a loss of the normal smoothness of the slick joint cartilage.
In short, Dr. Perdue's prognosis was that Kendrick did not have a bad knee problem and that he would recover. The doctor admitted that it was possible for Kendrick's condition to degenerate, but said that generally persons with his condition improved over a period of time and the symptoms would abate. Dr. Perdue thought it was even more likely that the condition would improve because Kendrick had potentially good musculature in his thigh.
We find the trial court's reliance on Dr. Perdue's opinion and its finding that Kendrick suffered only "minimal injury" are supported and are not clearly wrong. The award of $1,500 is within the trial court's discretion. Reck v. Stevens, 373 So.2d 498 (La.1979).

DECREE
The judgment in favor of Kendrick is AFFIRMED at his cost.
The judgment in all other respects is REVERSED and judgment is hereby rendered in favor of Mrs. Clarke and against the defendant insurer for $5,000, with legal interest from judicial demand, at the costs of defendant, here and below. Costs shall include the expert witness fees of Drs. Sirikul and Davis which are fixed in the amount of $150 each and the court reporter's charges for their respective depositions.
AFFIRMED IN PART.
REVERSED AND RENDERED IN PART.
NOTES
[1] The Colorado Supreme Court in Meyer lists the following states as holding household exclusions invalid: Arizona, Kansas, Michigan, New Jersey, New York, South Carolina, and Washington. The court recognized that cases in California, Georgia, Oklahoma, and Oregon support allowing such exclusions. 689 P.2d at 590.
[2] The accident occurred in 1982 when the policy minimum was $5,000. See LRS 32:861(B)(2) prior to 1984 amendment.