850 So.2d 882 (2003)
William Dale WALKER, et al., Plaintiffs-Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE, et al., Defendants-Appellees.
No. 37,063-CA.
Court of Appeal of Louisiana, Second Circuit.
June 25, 2003.
*883 Sockrider, Bolin, Anglin, Batte & Bowers, by James E. Bolin, Jr., Shreveport, for Appellants Meredith Walker, Price and Brooke Katherine Walker.
Rountree, Cox, Guin & Achee by Roland J. Achee and Gordon Rountree, New Orleans, *884 for Appellants William Dale Walker as Provisional Tutor of the Minors, Carmen Elizabeth Walker and Slade Etheredge Walker.
Corkern & Crews by Ronald E. Corkern, Jr., Guglielmo Marks Schutte, et al. by Henry Gerard Terhoeve, Counsel for Appellee State Farm Fire and Casualty.
Before GASKINS, CARAWAY and DREW, JJ.
GASKINS, J.
The plaintiffs, Meredith Ashley Walker and Brooke Katherine Walker, and William Dale Walker as provisional tutor for the minor plaintiffs, Carmen Elizabeth Walker and Slade Etheredge Walker, appeal a judgment by the trial court finding that the household exclusion in an umbrella insurance policy, purchased by the decedent, precluded recovery by the decedent's two adult children and two minor children for damages resulting from the death of their father in an automobile accident. For the following reasons, we affirm in part and reverse in part the trial court ruling and remand for further proceedings.

FACTS
The facts of this case were set forth in an earlier appeal of other issues in this matter. In Walker v. State Farm Mutual Automobile Insurance Company, 33,781 (La.App.2d Cir.8/25/00), 765 So.2d 1224, this court stated:
On July 17, 1998, a tragic automobile accident occurred when the family van being driven by Susan Walker ("Susan") collided with the rear of a tractor-trailer rig on Interstate 20 in Warren County, Mississippi. Susan's husband, Frank M. Walker, Jr., and her daughter, Nina Walker, were killed in the accident. Susan and her son, Slade Walker ("Slade"), were also injured in the crash.
This suit was filed by William Dale Walker, as the court appointed tutor for Susan's minor children, Carmen Elizabeth Walker ("Carmen") and Slade, and by Frank's adult children from a prior marriage, Meredith Ashley Walker and Brooke Katherine Walker. Named as defendants were Susan Walker and her two liability insurers, State Farm Fire and Casualty Company of Monroe and State Farm Mutual Automobile Insurance Company of Bloomington, Illinois.
In the prior appeal, this court upheld the trial court decision granting an exception of no right of action as to the wrongful death and survival action of the minor children against their mother, as well as Slade's claims for his personal injuries. We found that the parent-child immunity statute of La. R.S. 9:571 applied to bar those claims. Also, the trial court granted an exception of no cause of action, dismissing the minor children's wrongful death and survival claims for their sister, Nina. That ruling was not appealed.
On March 21, 2001, a partial dismissal was entered by Meredith and Brooke, the adult children, dismissing State Farm Mutual Automobile Insurance Company (State Farm Automobile), but reserving their claims against Susan and State Farm Fire and Casualty Company (State Farm Fire).
On March 23, 2001, William Dale Walker, as provisional tutor for Carmen and Slade, released State Farm Automobile from all claims for the injuries and death of Frank.
On July 3, 2001, through his provisional tutor, Slade dismissed Susan Walker, State Farm Automobile and State Farm Fire regarding his personal injuries. He reserved his right to proceed against State Farm Fire on his claim for the wrongful death of his father.
*885 On October 19, 2001, a stipulation was entered that the accident was caused solely by Susan Walker and that the only claims before the court are the survival and wrongful death actions by the four children of the deceased. The document provided that there were two liability policies in effect. First, there was a policy by State Farm Automobile covering the Chevrolet van involved in the accident. The policy limits of $100,000 per person were paid and Susan Walker and State Farm Automobile were released. Rights were reserved against State Farm Fire, issuer of the second policy, a personal liability umbrella policy (PLUP), with a policy limit of $1,000,000. The PLUP is the subject of the present dispute. The parties stipulated that the value of the claim of the children of the deceased is $1,000,000 if the court finds that coverage exists under the umbrella policy.
On March 11, 2002, a supplemental stipulation was entered specifying that the value of the claims by or on behalf of the decedent's children is $1,000,000, if all four are allowed to recover. If only the adult children, Meredith and Brooke, are allowed recovery, they should receive $150,000 each, with no credit for the amount previously paid by State Farm Automobile.
A hearing was held on February 19, 2002, to determine whether there was coverage under the umbrella policy issued by State Farm Fire. Further argument was held on May 17, 2002, at the trial court's request. Judgment was entered by the trial court on September 21, 2002, in favor of State Farm Fire and against William Dale Walker, on behalf of Carmen and Slade, and against Meredith and Brooke Walker.
In reasons for judgment, the trial court noted that the PLUP issued by State Farm Fire contained the following exclusion and definitions:
We will not provide insurance:
. . . .
10. For bodily injury or personal injury to the named insured, spouse, or anyone within the meaning of part a. or b. of the definition of insured.
This exclusion also applies to any claim made or suit brought against you to share damages with or repay someone else who may be obligated to pay damages because of the bodily injury or personal injury.
5. `Insured' means:
a. the named insured;
b. the following residents of the insured's household:
(1) the named insured's relatives; and
(2) anyone under the age of 21 under the care of a person named above ...
7. `relative' means any person related by blood, adoption, or marriage to the named insured.
9. `personal injury' means bodily harm, sickness, disease, shock, mental anguish or mental injury.
The court found that the household exclusion in the PLUP applied to preclude recovery by the decedent's four surviving children. The trial court rejected the argument that the household exclusion in the PLUP was against public policy. The court noted that the Louisiana legislature recently found that such exclusions were against public policy in primary automobile insurance policy coverage. La. R.S. 22:622.2 was enacted to prohibit such exclusions. The trial court found that there is no mandatory requirement to maintain additional automobile liability insurance under an excess or umbrella policy and therefore, there are no public policy considerations with regard to the maintenance of such a policy. Parties are free to *886 contract to accept or reject a family exclusion. The court reasoned that the PLUP is not mandatory and is aimed at affording protection from seizure by non-family members of the assets of the insured. Accordingly, the trial court held that the household exclusion in the PLUP did not violate public policy.
Based upon this reasoning, the court found that the minor children who were members of the decedent-insured's household are not entitled to recover under the PLUP due to the household exclusion.
As to the insured's adult children that were not residing in his household, the court stated that their cause of action for the wrongful death of their father is barred because he would not be entitled to recover under the PLUP. Because the PLUP did not provide coverage for claims arising out of injury, including death, to the named insured, the court concluded that the exclusion is applicable to the adult children.
Both the minors and the adult plaintiffs appealed the trial court judgment.

GENERAL LEGAL PRINCIPLES
An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. The parties' intent as reflected by the words of the policy determines the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. Louisiana Insurance Guaranty Association v. Interstate Fire and Casualty Company, 93-0911 (La.1/14/94), 630 So.2d 759.
An insurance policy should not be interpreted in an unreasonable manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and enforce reasonable conditions upon the policy obligations they contractually assume. Louisiana Insurance Guaranty Association v. Interstate Fire and Casualty Company, supra. See also Mobley v. State Farm Mutual Automobile Insurance Company, 28,357 (La.App.2d Cir.5/8/96), 674 So.2d 1117, writ denied, 96-1402 (La.9/20/96), 679 So.2d 433.

PUBLIC POLICY
The clear wording of the PLUP excludes the minors' right to recover unless the exclusion is written out due to public policy considerations. The minors first argue that the trial court erred in finding that public policy considerations of the Direct Action Statute, set forth in La. R.S. 22:655(D), do not apply to this case.[1] They contend that the trial court erred in finding that the purpose of the PLUP was to protect the assets of the insured from seizure by non-family members, and therefore *887 the household exclusion was not against public policy.
The minors assert that all liability policies are issued for the benefit of all injured persons and their survivors or heirs. They argue that the PLUP is a liability policy which is subject to the policy considerations of the Direct Action Statute. They claim that the courts have applied the policy considerations of La. R.S. 22:655(D), that all liability policies are executed for the benefit of all injured persons, to business use exclusions in automobile policies, mobile home owners' policies, and surplus line automobile liability policies. The minors urge that the purpose of the insurance policy is for the protection of the public, not for the protection of the insured.
The minors also assert that the trial court erred in finding that the household exclusion in the umbrella policy was not against public policy, and further, that there was no public policy that applied to umbrella policies. They claim that the trial court acknowledged that the public policy considerations regarding mandatory automobile liability insurance caused the household exclusion to be contrary to public policy. However, because the umbrella policy was not compulsory, the trial court found that those public policy considerations did not apply in this case. The minors maintain that the PLUP, as applied in this case, is an automobile liability policy.
The minors insist that the optional nature of the umbrella coverage does not negate the public policy considerations. They argue that, because the policy provides automobile liability coverage, the household exclusion may not be applied. The minors urge that there is no need to look further than La. R.S. 22:655(D), reinforced by La. R.S. 22:622.2, for authority to strike down the household exclusion in this case.[2]
According to the minors, La. R.S. 22:622.2 struck down the household exclusion on primary automobile policies and specified that the full limits of the policy apply, rather than limiting recovery to the statutory minimum coverage required. In arguing the applicability of La. R.S. 22:622.2, which went into effect after this accident, the minors contend that the statute largely reiterates the public policy provisions already set forth in La. R.S. 22:655(D).
The minors argue that, in addition to excess homeowner's coverage, the PLUP also provides excess automobile liability coverage.
It has long been the recognized public policy of this state that liability insurance is issued for the protection of the general public as well as for the security of the insured. Young v. Brown, 27,018 (La.App.2d Cir.6/21/95), 658 So.2d 750, writ denied, 95-1811 (La.10/27/95), 662 So.2d 1. The goal of all liability policies is to benefit injured persons and to give coverage and protection to all insureds. Marcus v. Hanover Insurance Company, 1998-2040 (La.6/4/99), 740 So.2d 603.
La. R.S. 22:655 is designed to facilitate the recovery of damages ex delicto.
*888 When the statute is applicable and authorizes a direct suit against a tortfeasor's insurer, the statute is read into and becomes a part of a policy written pursuant thereto, even though the policy does not contain the language required by the statute, or contains language prohibited by the statute. Quinlan v. Liberty Bank and Trust Company, 575 So.2d 336 (La.1990). La. R.S. 22:655 in part declares the policy underlying the creation of the direct cause of action against a liability insurer. La. R.S. 32:861, the Compulsory Insurance Law, reinforces the policy of La. R.S. 22:655. The purpose of the compulsory liability security law is not to protect the owner or operator against liability, but to provide compensation for persons injured by the operation of insured vehicles. Clarke v. Progressive American Insurance Company, 469 So.2d 319 (La.App. 2d Cir. 1985).
In the context of compulsory automobile liability insurance, we have found household exclusions to be void. This court in Clarke v. Progressive American Insurance Company, supra, found that the provision excluding coverage for bodily injury to an insured was contrary to express and implied statutory policy. However, the exclusion was applied only to the statutory minimum levels of coverage required by the compulsory insurance law. Therefore, the court reformed the policy to provide the minimum policy limits required by law at that time. In Pitcher on Behalf of Pitcher v. Pitcher, 607 So.2d 838 (La.App. 1st Cir.1992), the first circuit found that, in the field of compulsory liability automobile insurance, the household exclusion provision denies coverage to a specific class of victim who may be entitled by law to recover for a tortfeasor's negligence, except for their relationship to a person who is insured under the policy. Because such a denial is contrary to public policy, it was found to be void. The public policy considerations forming the basis for voiding the household exclusion in motor vehicle liability policies were written into the law in La. R.S. 22:622.2, set forth above.
In Southern American Insurance Company v. Dobson, 441 So.2d 1185 (La.1983), the Louisiana Supreme Court considered that the language found in the uninsured motorist statute made it apply to insurance "covering liability arising out of the ownership, maintenance, or use of any motor vehicle." The court determined that an umbrella policy was automobile liability insurance for the purposes of the uninsured motorist statute, covering liability arising out of the ownership, maintenance, or use of any motor vehicle. The court found that it made no difference that such coverage is made to depend upon a primary policy or that the policy contains other provisions which cover other types of losses. However, this is also not compulsory insurance, and the insured is free to reject the coverage.
It is clear that a household exclusion is not valid in a primary automobile insurance policy. We must now consider whether the excess coverage provided by the umbrella policy, issued in addition to a mandatory motor vehicle policy, is subject to the same public policy considerations of the primary policy which bar application of the household exclusion.
The umbrella policy under consideration in this case is not a mandatory primary automobile liability policy. Rather, it provides excess insurance for accidents that result in personal injury or property damage. These are not limited to automobile accidents. Because the policy is not compulsory, the same public policy considerations set forth in the Clarke case and La. R.S. 22:622.2 are not operable here. Clarke, supra, and La. R.S. 22:622.2 insure that all innocent injured victims, including *889 spouses and residents of the tortfeasor's household, are provided a basic level of insurance coverage for their damages. However, the insurer in an umbrella policy is not providing compulsory coverage and the insurer has the right to express the limits of its liability. The insured is free to accept or reject those terms.
We also find that La. R.S. 22:655 does not support the contention that the household exclusion is void under all circumstances. Such exclusions are applicable in other contexts, such as homeowner's insurance. See Whitaker v. State Farm Fire and Casualty Company, 454 So.2d 1251 (La.App. 2d Cir.1984), writ denied, 462 So.2d 1262 (La.1985), and Marchese v. State Farm Fire and Casualty Company, 396 So.2d 490 (La.App. 4th Cir.1981), cited in Clarke v. Progressive American Insurance Company, supra.
The language in La. R.S. 22:622.2 is not as broad as that found in Southern American Insurance Company v. Dobson, supra, wherein the Louisiana Supreme Court found the PLUP met the definition found in the uninsured motorist statute that covered "liability arising out of the ownership, maintenance, or use of any motor vehicle." Here, La. R.S. 22:622.2 applies to a "motor vehicle liability policy" or "any uninsured motorist coverage for bodily injury."[3] As such the PLUP does not meet the definition of the statute.
The determination of whether the household exclusion is against public policy in an umbrella policy is res nova in this state. However, the issue has been considered in other states.
In some cases, state law provides that the umbrella policy is not a motor vehicle liability policy and is not subject to statutory requirements for such policies. See Wright v. State Farm Mutual Automobile Insurance Company, 332 Or. 1, 22 P.3d 744 (2001).
Some states have noted that, while the household exclusion is void as to mandatory automobile liability insurance, the same considerations are not applicable to umbrella policies, which are optional. In those cases, the household exclusion has been applied in umbrella policies. See Bogas v. Allstate Insurance Company, 221 Mich.App. 576, 562 N.W.2d 236 (1997), appeal denied, 456 Mich. 925, 573 N.W.2d 620 (1998); Weitz v. Allstate Insurance Company, 273 N.J.Super. 548, 642 A.2d 1040 (1994); State Farm Mutual Automobile Insurance Company v. Gengelbach, (D.Kan. 1992), 1992 WL 88025; Electric Insurance Company v. Rubin, 32 F.3d 814 (1994).
In other states, the household exclusion has been found to be enforceable in both the primary automobile liability insurance policy and the umbrella policy. See Shahan v. Shahan, 988 S.W.2d 529 (Mo. 1999); Schanowitz v. State Farm Mutual Automobile Insurance Company, 299 Ill. App.3d 843, 234 Ill.Dec. 289, 702 N.E.2d 629 (1998); Auto Owners Insurance Company v. Van Gessel, 665 So.2d 263 (Fla.2d DCA 1995), review denied, 671 So.2d 788 (Fla.1996); Shelter General Insurance Company v. Lincoln, 590 N.W.2d 726 (Iowa 1999).
In still other states, the household exclusion is unenforceable as contrary to public policy in both mandatory automobile insurance policies and in umbrella policies. See Safeco Insurance Company of Illinois v. Automobile Club Insurance Company, 108 Wash.App. 468, 31 P.3d 52 (2001); Dairyland Insurance Company v. State Farm Mutual Automobile Insurance Company, *890 41 Wash.App. 26, 701 P.2d 806 (1985), review denied, 104 Wash.2d 1016, 1985 WL 320889 (Wash.1985).
Although we recognize a trend in the jurisprudence and legislation of this state to preclude the household exclusion in the context of compulsory automobile insurance coverage, we do not find the same policy considerations to be applicable in the context of discretionary coverage in this umbrella policy. We note that La. R.S. 22:622.2 was enacted after the accident in this case occurred. The statute does not specify that it is to be given retroactive application. We make no determination as to the outcome of this matter had the accident occurred after the passage of this provision.
Under the facts presented in this case, we find that the household exclusion is applicable to preclude recovery by the minor children of the decedent.

ADULT CHILDREN'S RIGHT TO RECOVERY
State Farm Fire contends that the adult children's claims are for injuries to a named insured under the terms of the PLUP and are barred by the household exclusion. The adults argue that, because they were not residents of the decedent's household, they were not included in the definition of "insured." They also contend that their wrongful death claim is not derivative of the injuries sustained by their father in the accident. Rather, they are asserting wrongful death claims which are specific injuries to them. This argument has merit.
In Louisiana, the wrongful death action is authorized by La. C.C. art. 2315.2. The provision clearly and unambiguously expresses that the wrongful death action compensates the beneficiaries for their own injuries suffered as a result of the victim's death. The plaintiff's injury in a wrongful death action occurs when the victim dies. Walls v. American Optical Corporation, XXXX-XXXX (La.9/8/99), 740 So.2d 1262. The survival action and the wrongful death action are two separate and distinct causes of action that arise at different times, address themselves to the recovery of damages for different injuries and losses, and accrue to different tort victims. The survival action comes into existence simultaneously with the tort, permits recovery only for the damages suffered by the victim from the time of injury to the moment of death, and is transmitted to the victim's beneficiaries upon his death. Conversely, the wrongful death action arises only if and when the victim dies and compensates the beneficiaries for their own individual injuries that occur at the moment of the victim's death and thereafter. Boullt v. State Farm Mutual Automobile Insurance Company, XXXX-XXXX (La.10/19/99), 752 So.2d 739.
The wrongful death action is not a derivative cause of action. Rather, the wrongful death action is an independent and distinct action that arises even in the absence of a viable personal injury action by the direct tort victim and compensates the beneficiaries for their own individual injury arising out of the victim's death. Walls v. American Optical Corporation, supra.
In this matter, the adult plaintiffs were not residents of the decedent's household. Accordingly, they are not "insureds" under the policy definition. We also note that State Farm Fire argues that the household exclusion is based upon policy considerations in La. R.S. 9:291, prohibiting suits between spouses, and La. R.S. 9:571, prohibiting suits by unemancipated children against their parents. State Farm Fire also notes the possibility of collusion between family members as a reason for *891 excluding coverage for injury claims resulting from the negligence of a family member. The fact that the injuries have to meet the $300,000 threshold for the PLUP negates the notion that injuries of that magnitude could be feigned or fraudulently induced.
The household exclusion is not a bar to recovery by the adult plaintiffs for their wrongful death claims suffered as a result of this accident. In denying their claim, the trial court stated that the policy provided that "we will not provide insurance for injury to the named insured." The trial court construed this provision to exclude coverage for claims in connection with injury to the named insured, even though that language does not appear in the policy. Upon examination of the policy language, we find that this interpretation of the policy is not correct.
As stated above, the wrongful death claim is not derivative of the decedent's claim. As a result of Mrs. Walker's negligence, the adult plaintiffs suffered their own individual injuries occurring at the time of their father's death and thereafter. "Personal injury" is defined under the policy as "bodily harm, sickness, disease, shock, mental anguish or mental injury. This includes required care, loss of services, and death resulting therefrom." Accordingly, we reverse that portion of the trial court judgment denying coverage for wrongful death claims to Meredith and Brooke Walker. We note that it appears unfair to afford different treatment to the adult plaintiffs who were not residents of the decedent's household, as opposed to minor children who were living with their father. However, this is a matter of contract in which the parties can decide the limitations of their agreement.

CONCLUSION
For the reasons stated above, we affirm in part and reverse in part the decision of the trial court. We deny recovery to William Dale Walker as provisional tutor for the minor plaintiffs, Carmen Elizabeth Walker and Slade Etheredge Walker. We grant judgment in favor of the adult plaintiffs, Meredith Ashley Walker and Brooke Katherine Walker, for their wrongful death claims arising from the death of their father. The matter is remanded for further proceedings.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] La. R.S. 22:655(D) provides:

It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons and their survivors or heirs to whom the insured is liable; and, that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor within the terms and limits of said policy.
[2] La. R.S. 22:622.2 which became effective on August 15, 2001, provides as follows:

No motor vehicle liability policy nor any uninsured motorist coverage for bodily injury shall limit the coverage of the spouse or resident relative of a named insured who may suffer bodily injury due to any fault of the named insured in any amount less than the face value of the policy. Any provision of a motor vehicle insurance policy issued in the state of Louisiana that is not in accord with this Section is contrary to the public policy of this state and shall be null, void, and unenforceable.
[3] The applicability of La. R.S. 22:622.2 to the PLUP uninsured motorist policy was not asserted at the trial below, and consequently, will not be addressed on appeal.