**Lannis WALTERS, Plaintiff,**

v.

**PAN AMERICAN LIFE INSURANCE COMPANY, et al., Defendants.**

**Civ. A. No. H89–0147(G).**

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

Jan. 24, 1990.

---

Dal Williamson, Laurel, Miss., for plaintiff.

D. Cary Sutherland, Heidelberg, Sutherland and McKenzie, Hattiesburg, Miss., for defendants.

## MEMORANDUM OPINION

GEX, District Judge.

This matter comes before the Court on the motion of the plaintiff for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Court, having fully reviewed the record in this action, as well as the briefs filed by the parties to this motion, concludes as follows:

### Standard of Review

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in the light most favorable to the nonmoving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir.1984). The Supreme Court has discussed and clarified the relevant standard for summary judgment:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Furthermore, speculative evidence, lacking a reasonable basis in fact, is insufficient to enable the nonmoving party to avoid summary judgment. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for

438

a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis,* 799 F.2d 218, 222 (5th Cir.1986). Hence, "[t]he mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* The Fifth Circuit has determined that:

> An issue is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party. If, on the other hand, the evidence offered by both the moving and opposing parties would support only one conclusion and, even if all the evidence to the contrary is fully credited, a trial court would be obliged to direct a verdict in favor of the moving party, the issue is not genuine.

\* \* \* \* \* \*

Thus, as the Supreme Court recently said in *Anderson v. Liberty Lobby, Inc.,* affirming a summary judgment rendered by a trial court: 'The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are any genuine factual issues that can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'

*Id.* at 223.

"With regard to 'materiality,' only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation,* 812 F.2d 265, 272 (5th Cir.1987).

*Statement of Facts*

The plaintiff, Lannis Walters, was an employee of Diesel Power Services, Inc. (Diesel Power) during all relevant times. In March of 1988, the owners of Diesel Power decided to change their company insurance program and seek coverage with the defendant, Pan American Insurance Company (Pan Am). On March 4, 1988, J.M. Strickland, secretary-treasurer of Diesel Power, signed a document entitled "Application and Subscription Agreement" (the Agreement). The Agreement called for Diesel Power's participation in the Ultimate Trust Insurance plan (the Trust) through which group medical insurance coverage was obtained by Diesel Power from Pan Am. The Agreement also delineated the scope of coverage and provided that Diesel Power would pay 100% of the premiums for its employees/"plan participants." The agreement identified Diesel Power as the "plan sponsor," Faye Manning as the "plan administrator," National Insurance Services, Inc. (NIS) as the "general administrator," and Pan Am as the underwriter. The Agreement further provided for coverage for seventeen full-time employees and eight dependents and its medical coverage became effective on March 31, 1988.

Travis Walters is the minor son of the plaintiff and he was born on October 23, 1986, with a condition known as "cryptorchidism" or undescended testicle. In September of 1988, Dr. John Hassell determined that Travis needed surgery to correct his cryptorchidism. Dr. Hassell referred Travis to Dr. Randolph Ross for the surgery. Dr. Ross performed the surgery on April 26, 1989. Then, on or about June 29, 1989, the plaintiff submitted a claim for expenses which were incurred in the surgery and treatment of Travis. These expenses totaled $3,684.85. Subsequently, the defendants denied the claim on July 21, 1989, because the medical expenses were incurred to correct or treat a congenital defect.

Thereafter, the plaintiff filed the instant suit in the Circuit Court for the Second Judicial District of Jones County, Mississippi for benefits under the policy and for

consequential, extra-contractual, and punitive damages under state law. The defendants then removed the action to this Court. The plaintiff now moves for summary judgment asserting that his claims are not preempted by the Employee Retirement Income Security Act (ERISA).

### Conclusions of Law

ERISA regulates employee welfare benefit plans which "through the purchase of insurance or otherwise" establish medical, hospital, or surgical care or benefits for sickness, disability, accident or death. 29 U.S.C. § 1002(1); *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). In recognition for the need for uniform regulation of ERISA plans, Congress included three statutory provisions concerning the preemptive effect of the act upon state law which is codified at 29 U.S.C. § 1144. The court in *Pilot Life Insurance Company* succinctly summarized the provisions as follows:

> If a state law "relate[s] to ... employee benefits plan[s]," it is pre-empted.... The saving clause excepts from the preemption clause laws that "regulat[e] insurance.".... The deemer clause makes clear that a state law that "purports to regulate insurance" cannot deem an employee benefit plan to be an insurance company. (Cites omitted.)

*Pilot Life Insurance Company*, 481 U.S. at 45, 107 S.Ct. at 1552.

In light of *Pilot Life Insurance Company*, a two-part analysis is used to determine whether certain claims are preempted. First, it must be determined whether the health insurance package sponsored by Diesel Power qualifies as an "employee welfare benefit plan" as defined by ERISA. Second, if the plan is one controlled by ERISA, then it must be decided whether the state law claims raised by the plaintiff's complaint "relate to" the employee benefit plan. If the plaintiff's state law claims do relate to the plan, such claims are preempted. *Pilot Life Insurance Company*, 481 U.S. at 45, 107 S.Ct. at 1551–52.

### I. Employee Welfare Benefit Plan

■ Congress enacted ERISA to safeguard and protect the interests of employees and beneficiaries under benefit plans established and maintained by the respective employers. 29 U.S.C. § 1001, *et seq.* Toward this purpose, Congress intended that comprehensive regulatory coverage under ERISA would apply to "any employee benefit plan if it is established or maintained" by an employer and/or employee organization. 29 U.S.C. § 1003. ERISA defines such employee welfare benefit plans as constituting:

> [A]ny plan, fund, or program ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death....

29 U.S.C. § 1002(1). *See also Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982).

In *Davis v. Time Insurance Company*, 698 F.Supp. 1317 (S.D.Miss.1988), this District Court noted that:

> Generally speaking, five statutory requirements have evolved which lend insight into whether a particular plan is covered under ERISA, they require: "(1) A plan, fund or program, (2) established or maintained, (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, unemployment or vacation benefits...., (5) to participants or their beneficiaries." *Ed Miniat, Inc. v. Globe Life Insurance Group, Inc.*, 805 F.2d 732, 738 (7th Cir.1986) [*cert. denied* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987)]; *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir.1982) (en banc).

*Davis*, 698 F.Supp. at 1319. Additionally, the Fifth Circuit proclaimed in *Memorial Hospital System v. Northbrook Life In-*

*surance Company*, 904 F.2d 236 (5th Cir. 1990) that:

an ERISA plan is established "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc). A formal document designated as "the Plan" is not required to establish that an ERISA plan exists; otherwise, employers could avoid federal regulation merely by failing to memorialize their employee benefit programs in a separate document so designated.

*Memorial Hospital System*, 904 F.2d at 240–41 (footnotes omitted).

The plaintiff does not dispute that Diesel Power is an employer engaged in activities affecting commerce. Nor does the plaintiff contest that the benefits offered under the group insurance policy are among the types of benefits referenced in 29 U.S.C. § 1002(1)(A). The plaintiff contends that Diesel Power's purchase of medical coverage did not establish a plan. In the *Memorial Hospital System* case, the court pointed out that:

Memorial argues, however, that the insurance policy provided by defendants cannot itself be an ERISA plan, and that there is no indication in the record of a "plan, fund or program" independent of the bare purchase of group health insurance. We disagree.

By its express terms, ERISA encompasses welfare plans provided through the purchase of insurance. 29 U.S.C. § 1002(1). Moreover, it is a common practice for employers to provide health care benefits to their employees through the purchase of a group health insurance policy from a commercial insurance company. *See Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 727, 105 S.Ct. 2380, 2382, 85 L.Ed.2d 728 (1985).

*Memorial Hospital System*, 904 F.2d at 240.

The three owners of Diesel Power were J.M. Strickland, John Hanna, and Parker McCurley. The owners stated in their affi-davits that they obtained the group medical insurance policy to provide medical coverage for the employees who participated. The owners declared that the employees paid the portion of the premiums for their dependents and that Ms. Manning would forward these premiums to NIS. Mr. Strickland executed the Application and Subscription Agreement which named Faye Manning as the plan administrator. Ms. Manning averred that she sent Diesel Power's check for the premiums each month to NIS and maintained a supply of claim forms. Thus, the owners' affidavits show that elements one, two and three of the *Davis* test were met—a plan established or maintained by the employer.

The Agreement signed by Mr. Strickland provided medical, surgical, and hospital care benefits for the participating employees. As noted above, the owners obtained the group medical insurance policy to provide medical coverage for participating employees. Ms. Manning testified that all of the male employees of the company and some of their dependents participated. The Agreement reflects that seventeen full-time employees and eight dependents were covered by the plan. Therefore, elements four and five of the *Davis* test are met— the employer's plan provides for medical benefits for participants and their dependents.

Pursuant to the terms of the employer application, Diesel Power agreed to pay benefits with respect to each employee insured hereunder. These facts make it clear that the plan at issue was established and maintained by Diesel Power for the purpose of providing its employees and their dependents with accidental injury, medical, hospital and surgical expense benefits. Similar plans have been held to constitute employee welfare benefit plans under § 1002(1). *Belasco v. W.K.P. Wilson & Sons, Inc.*, 833 F.2d 277 (11th Cir.1987); *Bohlmann v. Logos School*, 669 F.Supp. 951 (E.D.Mo.1987); *Light v. Blue Cross & Blue Shield*, 616 F.Supp. 558 (S.D.Miss. 1985), *aff'd*, 790 F.2d 1247 (1986). Therefore, the plaintiff's employer in the instant case provided precisely the kind of benefits

contemplated in the ERISA definition of an employee benefit plan and in precisely the manner specified by the statute. The plan also provided the type of benefits enumerated in the statutory definition of an employee benefit plan, including medical, surgical, hospital, and accidental injury benefits. Finally, these benefits were provided by the plaintiff's employer for its employees and their dependents, the plan participants and their beneficiaries, in accordance with the statutory definition. The plaintiff was able to claim benefits under the plan only due to the plaintiff's status as a plan participant. Furthermore, under regulations promulgated by the United States Department of Labor pursuant to Congressional authority, 29 U.S.C. § 1135, certain group or group-type insurance plans are excluded from ERISA coverage only if all of the following four criteria are satisfied:

(1) No contributions are made by an employer or employee organization.

(2) Participation in the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues check-offs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit for administrative services actually rendered in connection with employee deductions or dues check-offs.

29 C.F.R. § 2510.3–1(j). In the *Memorial Hospital System* decision, the Fifth Circuit concluded "[t]he 'and' connector indicates that the existence of any one of the four criteria listed in the regulation would prevent a group insurance plan, otherwise qualifying as an ERISA plan, from being excluded from coverage under the Act." *Memorial Hospital System*, 904 F.2d at 241, n. 6 (citing *Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th

Cir.1988), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989). The owners of Diesel Power readily admit that they paid the premiums for the employees so this regulation does not prevent the plan from being an ERISA plan.

The plaintiff argues that the mere purchase of insurance cannot establish an ERISA plan. On this issue, the Fifth Circuit said in *Memorial Hospital System* that:

> While the bare purchase of an insurance policy may not exclusively establish the existence of an ERISA plan, *see Taggart Corp. v. Life & Health Benefits Admin.*, 617 F.2d 1208, 1211 (5th Cir.1980), cert. denied, 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981); *Donovan*, 688 F.2d at 1373, 1375, the evidence here clearly shows Noffs' intent to provide its employees with a welfare benefit program through the purchase and maintenance of a group insurance policy.

*Memorial Hospital System*, 904 F.2d at 241.

The plaintiff also contends that the insurance plan in this case is not an ERISA plan pursuant to the *Taggart Corp.* decision. However, the court in *Memorial Hospital System* was faced with the identical argument. That court reasoned:

> Memorial's reliance on *Taggart* for the proposition that a "bare bones" insurance policy does not amount to an ERISA plan is misplaced. *Taggart* involved a claim by a corporation and its only employee that a multiple employer trust (MET) constituted an ERISA plan. The MET in *Taggart* was a profit-making enterprise that provided group insurance to employers too small to qualify for group rates on their own. The Taggart Corporation did not participate in the formation of the MET, and had no involvement in its day-to-day operations. The corporation, through its president and sole employee, Stanley Kansas (Kansas), subscribed to the MET in order to obtain health care for Kansas and his family at reduced premiums. Asserting that the MET itself was an employee welfare benefit plan, the corporation and Kansas

brought suit under ERISA against the insurance carrier to recover health insurance benefits allegedly owing to Kansas's wife.

The district court concluded that the facts did not establish the existence of an ERISA welfare plan and dismissed the case for lack of subject matter jurisdiction. *Taggert Corp. v. Efros,* 475 F.Supp. 124, 127 (S.D.Tex.1979). The court found that the "circumstances surrounding the submission of the subscription agreement by Stanley M. Kansas ... simply involve[d] the purchase of insurance by plaintiff, Stanley M. Kansas, for himself and his family."

We affirmed, holding that "neither SMET [the MET] nor Taggart's subscription to SMET constitutes a 'plan, fund, or program,' within the meaning of 29 U.S.C.A. § 1002(1)." *Taggart,* 617 F.2d at 1211. We stated in our discussion that, "[c]onsidering the history, structure and purposes of ERISA, we cannot believe that that Act regulates bare purchases of health insurance where, as here, the purchasing employer neither directly nor indirectly owns, controls, administers or assumes responsibility for the policy or its benefits.... The corporation did no more than make payments to a purveyor of insurance, patently for tax reasons." *Id.*

Although we held in *Taggart* that the purchase of an insurance policy does not, in and of itself, establish the existence of an ERISA plan, we certainly did not hold, contrary to Memorial's argument, that an employer's purchase of health insurance offers no evidence of an intent to provide such a plan. We agree with the reasoning of the Eleventh Circuit that

> the purchase of insurance does not conclusively establish a plan, fund, or program, but the purchase is evidence of the establishment of a plan, fund, or program; the purchase of a policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established.

*Donovan,* 688 F.2d at 1373.

There is apparently a MET involved in this case; Northbrook's certificate of insurance lists the policyholder as "Trustee of the Northbrook Multiple Employer Trust." Neither side, however, has enlightened us as to the MET's purpose, organization, functions, or connection to Noffs. In any event, we do not read Taggart so broadly as to exempt all employee welfare benefit plans from ERISA regulation simply because a MET is connected in some manner with the plan. *See Donovan,* 688 F.2d at 1374–75; *Perkins v. Time Ins. Co.,* 701 F.Supp. 576, 577–78 (S.D.Miss.1988); *Davis v. Time Ins. Co.,* 698 F.Supp. 1317, 1320–21 (S.D.Miss.1988).

Unlike *Taggart,* the present case does not involve the bare purchase of insurance by a lone employee through a MET. *Noffs, a statutory employer, has chosen to provide welfare benefits to all of its full-time employees through the purchase of a group insurance policy. Noffs is solely responsible under the policy for submitting monthly premiums directly to Northbrook by the premium due dates. The fact that Noffs' administrative functions under the policy are minimal is perfectly in keeping with its intent that Northbrook administer the plan as well as insure it. There is, thus, an employer-employee-plan relationship that was lacking in Taggart.* See Perkins, 701 F.Supp. at 578 (employer-employee relationship distinguishable from Taggart's employee-MET, or even employer-MET, relationship).

*Memorial Hospital System,* 904 F.2d at 241–43 (emphasis added) (footnotes omitted).

In the instant case, *Taggart Corp.* is distinguishable because MET was a non-profit operation. Joyce Folkenson, a manager for NIS, averred that the Pan Am policy at issue in this case was issued through the Ultimate Trust with AmSouth Bank of Birmingham, Alabama as the trustee. She further stated in her affidavit that the Ultimate Trust is not a profit-making entity and its only business is to act as the policy-holder for employer-spon-

sored group insurance policies issued through it. The three owners chose to provide insurance for seventeen employees, including all of the companies full-time male employees, and eight dependents. Diesel Power paid the premiums. So there is "an employer-employee-plan relationship that was lacking in *Taggart*" even though Diesel Power's administrative duties were minimal. Thus, the *Taggart* decision does not require the Court to find that the subject plan is not an ERISA plan and the Court does find that it is an ERISA plan. Finally, this decision is not the first one to find Diesel Power's insurance arrangement to be an ERISA governed plan. *See Hanna v. Pan American Life Insurance Company*, H89–0109(R) (S.D.Miss. July 3, 1990; Judge Dan Russell) (S.D.Miss. September 9, 1989; Judge Britt Singletary) (both decisions holding that the Pan Am policy with Diesel Power is an ERISA plan).

## II. *Preemption*

In enacting ERISA, Congress made clear that it intended ERISA's comprehensive regulatory scheme to supersede any and all state laws that relate to employee welfare benefit plans. 29 U.S.C. § 1144(a). "The term 'State Law' includes all laws, decisions, rules, regulations, or any other State action having the effect of law, of any States." *Pilot Life Insurance Company*, 481 U.S. at 48 n. 1, 107 S.Ct. at 1553 n. 1. Moreover, ERISA's preemption of state law "is not limited to state laws specifically designed to affect employee benefit plans." *Id.* at 47–48, 107 S.Ct. at 1553 (*quoting Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)). To the contrary, the phrase "relate to" is given its broad, common sense meaning, such that "a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985).

ERISA contains two exceptions to its preemption rules. The one relevant to the present issues is what is commonly referred to as the "savings clause." It ex-

cepts from preemption those state laws that "regulate insurance." 29 U.S.C. § 1144(b)(2)(A). The mere fact that a state law may be located within that state's insurance code is not determinative of the regulation issue. Rather, in *Pilot Life Insurance Co. v. Dedeaux*, the United States Supreme Court established a detailed three prong test to be applied in making the determination. First, the Court directed that a state law must be analyzed under a "common sense" approach to determine its regulating effect on the insurance industry. The court stated that "a common sense view of the word 'regulates' would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but be specifically directed toward that industry." *Pilot Life Insurance Company*, 481 U.S. at 50, 107 S.Ct. at 1554. The second prong of the test is the application of three criteria that are utilized in deciding whether a practice falls within the "business of insurance" phrase of the McCarran–Ferguson Act, 15 U.S.C. § 1011, *et seq.* Those factors are:

> "[F]irst, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982).

*Pilot Life Insurance Company*, 481 U.S. at 48–49, 107 S.Ct. at 1553. The final factor in the "regulation of insurance" test is whether the state law at issue conflicts with the civil enforcement provisions of ERISA found at 29 U.S.C. § 1132(a). *Pilot Life Insurance Company*, 481 U.S. at 52, 107 S.Ct. at 1555. *See also In re Life Insurance Company of North America*, 857 F.2d 1190 (8th Cir.1988).

### A. The Claim For Benefits

The plaintiff seeks benefits for the expenses incurred by the plaintiff in having surgery performed on his son to correct a

birth defect. The defendants denied the plaintiff's claim based on a policy provision. This provision states:

Article III—Medical Expense Insurance

\* \* \* \* \* \*

Section 4—Medical Expense Insurance Exceptions and Limitations
Exceptions

\* \* \* \* \* \*

B. We will not pay benefits, and charges will not accrue toward any deductible, under this Article for expense incurred for any of the following:

\* \* \* \* \* \*

11. Care or treatment of congenital defects; except that Eligible Expenses under the Medical Expense Insurance provision of this Article will be covered for treatment of Congenital Defects in newly-born Dependent Children of a Covered Person, who already has Dependent or Family Coverage prior to the birth of such newly-born Dependent Child or Children and which automatically covers such Dependent Child or Children from the moment of birth, and for which Dependent Child or Children premiums have been paid and accepted by Us. Coverage for such newly-born Dependent Child or Children must be uninterrupted for benefits to be available under this item 11.

Under this policy provision, the plaintiff may not recover on his claim for benefits for the expenses incurred in having his son's birth defect corrected and treated. This claim is barred because the plaintiff was not a covered employee when his son was born in 1986.

The plaintiff asserts that Miss.Code Ann. § 83–9–33 requires the defendants to provide coverage for his son's birth defects. This statute provides:

(1) All individual and group health insurance policies providing coverage on an expense incurred basis and individual and group service or indemnity type contracts issued after January 1, 1980, by an insurer or nonprofit corporation which provides coverage for a family member of the insured or subscriber shall, as to such family members' coverage, also provide that the health insurance benefits applicable for children shall be payable with respect to a newly born child of the insured or subscriber from the moment of birth.

(2) The coverage for newly born children shall consist of coverage of injury or sickness including the necessary care and treatment of medically diagnosed congenital defects, prematurities and birth abnormalities. . . .

Miss.Code Ann. § 83–9–33(1) and (2). This statute obviously is related to a welfare benefit plan since it specifically applies to group insurance policies and is therefore preempted if it does not regulate insurance. After applying the *Pilot Life Insurance Company* test, the Court finds that this statute regulates insurance and is not preempted because it mandates the inclusion of certain mandatory minimum coverage in health insurance policies (i.e., coverage of congenital defects in newly born children). In other words, the statute was specifically directed and limited to the insurance industry, has the effect of spreading the policy holder's risk, is an integral part of the policy relationship between the insurer and the insured, and, finally, by itself, this statute does not conflict with the civil enforcement provisions of ERISA. In *Metropolitan Life Insurance Company v. Massachusetts*, 471 U.S. 724, 739–48, 105 S.Ct. 2380, 2388–94, 85 L.Ed.2d 728 (1985), the United States Supreme Court held that a Massachusetts statute requiring group health policies to contain coverage for mental conditions was a statute which regulates insurance and is not preempted by ERISA. Thus, § 83–9–33 is not preempted by ERISA.

The defendants contend that there is not a conflict between the statute and the exclusion in the subject policy. They assert that § 83–9–33 simply requires an insurer to cover birth defects in newly-born children and the subject policy does cover newly-born children who are born once the coverage is in place. Thus, the defendants' policy and interpretation of § 83–9–33 provides no coverage for an employee's newly-

born child which is born prior to the effective date of the defendants' policy.

■ The plaintiff argues that pursuant to Miss.Code Ann. § 83–9–35, the defendants may not exclude coverage of his son's preexisting condition because they are the successor insurers of Blue Cross & Blue Shield of Mississippi. This statute provides:

(1) Upon replacement by a group insurance carrier, of any group or blanket health and accident insurance policy or plan for ten (10) or more members issued by another group insurance carrier for delivery or delivered in this state, any limitation on benefits otherwise payable because of preexisting conditions clauses, if any, in the succeeding carrier's plan shall not be more than the lesser of:

(a) The benefits of the new policy or plan determined without application of the preexisting conditions limitation; or

(b) The benefits of the prior policy or plan.

Miss.Code Ann. § 83–9–35 (Supp.1990). Obviously, this statute would mandate that the defendants provide coverage for the plaintiff's son's birth defect even though the son was born prior to the effective date of the subject policy. It is clear that the statute was specifically directed and limited to the insurance industry, has the effect of spreading the policy holder's risk, is an integral part of the policy relationship between the insurer and the insured. Additionally, this statute, alone, does not conflict with the civil enforcement provisions of ERISA.

However, the plaintiff's claim for policy benefits under state law does conflict with the civil enforcement statute. The *Pilot Life Insurance Company* decision made it clear that an insured's claim for benefits is limited to the remedies available under the civil enforcement scheme in ERISA. *See Aetna Life Insurance Company v. Borges,* 869 F.2d 142, 148 (2d Cir.1989), *cert. denied* 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989); *In re Life Insurance Company of North America,* 857 F.2d 1190, 1194 (8th Cir.1988); *Rasmussen v. Metropolitan Life Insurance Company,* 675 F.Supp. 1497, 1506–07 (W.D.La.1987); *Hanna v. Pan American Life Insurance Company,* H89–0109(R) (S.D.Miss. September 9, 1989; Judge Britt Singletary).

In *Harrelson v. Lamar Life Insurance Company,* H87–0212(G) (S.D.Miss. May 29, 1990), this Court was faced with a claim for extra-contractual and punitive damages based on § 83–9–35. This Court held that the plaintiff's claim for extra-contractual and punitive damages conflicted with the civil enforcement provision of ERISA and was therefore preempted. Although the *Harrelson* decision arguably stated that § 83–9–35 conflicted with ERISA's civil enforcement provisions and was thereby preempted, it is clear that the preemption was limited to the remedies that were sought. Those remedies (i.e., bad faith punitive damages and emotional damages) were held to have been preempted in the *Pilot Life Insurance Company* case and a claim for those remedies based on a state law (even one that clearly regulated insurance within the definition of the savings clause) would always be preempted. Therefore, the state law that the plaintiff based his claim for benefits on is not preempted but he may not recover benefits based on state law. The plaintiff is not without a remedy. He may use the remedies provided for in ERISA to assert that the denial of his claim for benefits was arbitrary and capricious.[1]

---

1. The plaintiff also asserts that another policy provision gave the plaintiff coverage. This provision states:

 Article VI—Uniform Provisions Applicable To All Insurance

 \* \* \* \* \* \*

 Section 2—General Provisions

 \* \* \* \* \* \*

 Conformity With Statute

 Any provision of the Policy that is in conflict with the statutes of the jurisdiction in which the Policyholder is located on such date is hereby amended to conform to the minimum requirements of such statutes.

 This provision may very well indicate that the policy's birth defect exclusion must yield to the coverage mandated by the combination of §§ 83–9–33 and 35. However, the plaintiff did

**446**

### B. The Claim For Punitive And Extra–Contractual Damages

■ The plaintiff seeks punitive and extra-contractual damages for the defendant's denial of his claim in violation of §§ 83–9–33 and 35. However, those statutes do not provide a remedy for a person aggrieved by an insurer's failure to comply and particularly do not provide for punitive and extra-contractual damages. Those damage claims are based on Mississippi state law (bad faith law) which has been held not to regulate insurance by the United States Supreme Court, *see Pilot Life Insurance Company*, 481 U.S. at 49–51, 107 S.Ct. at 1553–55, and, accordingly, are preempted. The extra-contractual claims are not solely based on the statutes which regulate insurance. In the *Pilot Life Insurance Company* decision, the employee, Dedeaux, was covered by his employer's long term disability plan, and his benefits were terminated. *Id.* at 43, 107 S.Ct. at 1550–51. Dedeaux sued, and his complaint contained three counts including tortious breach of contract, breach of fiduciary duties, and fraud in the inducement, all arising under state law. *Id.* at 57, 107 S.Ct. at 1558. In a unanimous decision, the Supreme Court held that Dedeaux's state law claims related to the ERISA-governed plan in question and thus were preempted. *Id.* The Court found that Mississippi's common law on breach of contract and tortious breach of contract which provided the basis for the breach of contract and bad faith claims was not specifically directed and limited to the insurance industry, did not have the effect of spreading the policy holder's risk, was not an integral part of the policy relationship between the insurer and the insured, and did conflict with the civil enforcement provisions of ERISA which only provide for recovery of benefits under the plan.

In the instant case, the Court finds that the plaintiff's claims are similar to those of Dedeaux's, and likewise are preempted by the provisions of ERISA. The plaintiff here asserts nothing more than state law

claims for breach of contract and punitive damages.

### *Conclusion*

For the reasons set forth above, the Court finds that the plan at issue is one subject to the preemptive effect of ERISA and the plaintiff's claims based on state law are preempted. Therefore, the plaintiff's motion for partial summary judgment is not well-taken and should be denied.

Counsel for defendant shall present an order in conformity with this opinion within ten (10) days of the date of entry hereof.

not move for summary judgment claiming that he was entitled to benefits under ERISA.